IN THE IOWA DISTRICT COURT FOR BLACK HAWK COUNTY

| | |
|---|---|
| HANNAH HAYES,<br><br>  Plaintiff,<br><br>v.<br><br>DEERE & COMPANY d/b/a JOHN DEERE COMPANY,<br><br>  Defendant. | Case No. __LACV143785__<br><br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:

You are hereby notified that there is now on file in the office of the clerk of the above court a Petition at Law naming you as a Defendant in the above-entitled action, a copy of the Petition at Law and Jury Demand is attached hereto. The Plaintiff's attorneys are MaKayla J. Augustine and Nicholas L. Shaull, Spaulding & Shaull, P.L.C., 2423 Ingersoll Avenue, Des Moines, Iowa 50312. The attorneys' phone number is (515) 277-6559 and facsimile number is (515) 277-7536.

You are further notified that the above case has been filed in a county that utilizes electronic filing. Unless, within 20 days after service of this original notice upon you, you serve, and within a reasonable time thereafter, file a motion or answer in the Iowa District Court for Black Hawk County, at the courthouse in Waterloo, Iowa judgment by default will be rendered against you for the relief demanded in the Petition. Please see Iowa Court Rules Chapter 16 for information on electronic filing and Iowa Court Rules Chapter 16, division VI regarding the protection of personal information in court filings.

If you need assistance to participate in court due to a disability, call the disability coordinator at (515) 286-3394. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). Disability coordinators cannot provide legal advice.

_____
CLERK OF THE ABOVE COURT
Black Hawk County Courthouse
316 E. 5th Street
Waterloo, IA 50703

**IMPORTANT**: You are advised to seek legal advice to protect your interests.

# Iowa Judicial Branch

Case No. **LACV143785**
County **Black Hawk**

Case Title    HANNAH HAYES VS DEERE & COMPANY

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential. For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(319) 833-3332** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/. **Disability access coordinators cannot provide legal advice.**

Date Issued **10/07/2021 01:16:55 PM**



District Clerk of Black Hawk    County
/s/ Lisa Barfels

IN THE IOWA DISTRICT COURT FOR BLACK HAWK COUNTY

| HANNAH HAYES, Plaintiff, v. DEERE & COMPANY d/b/a JOHN DEERE COMPANY, Defendant. | Case No. LACV143785 <br><br> **PETITION AT LAW AND JURY DEMAND** |
|---|---|

COMES NOW, the Plaintiff, by and through her undersigned attorneys, and for her Petition at Law, hereby states the following:

## JURISDICTION

1. At all times material hereto, Plaintiff Hannah Hayes (hereinafter, "Plaintiff") was an individual and resident of Waverly, Bremer County, Iowa.

2. At all times material hereto, Defendant Deere & Company d/b/a John Deere Company (hereinafter, "Defendant") is a business entity incorporated in the State of Delaware and is registered with the Iowa Secretary of State to conduct business within the State of Iowa.

3. The allegations which gave rise to this lawsuit occurred in Waterloo, Black Hawk County, Iowa.

4. The amount of damages in controversy meets applicable jurisdictional requirements.

5. On or about February 4, 2021—within 300-days of the acts of which she complains— Plaintiff filed charges of employment discrimination against Defendant with the Iowa Civil Rights Commission.

6. Plaintiff's Petition in the above-captioned matter was filed within 90 days from the date that the Iowa Civil Rights Commission issued its right to sue letter.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

8. Plaintiff began working for Defendant on or around 11/14/2011.

9. From on or around November 2011 to 2017, Plaintiff worked as a core room operator in Department 782 for the Defendant.

10. From on or around 2017 to March 2020, Plaintiff worked as a mold line operator in Department 804 for the Defendant.

11. On or around April 2020, Plaintiff began working as a melt line operator in Department 850 for the Defendant.

12. On or around said time, Defendant transferred Plaintiff to Department 850 as the "final straw" in accommodating Plaintiff's mental/psychological condition.

13. Prior to this, Defendant had sent other employees to Department 850 to terminate them.

14. On or around said time and place, Plaintiff was the only female in Department 850.

15. On or around said time and place, Plaintiff's supervisor, Nathan Roedema, stated to Plaintiff that the guys [all other employees] in Department 850 did not believe a girl could make it as a melt line operator.

16. In April 2020, a male employee in Department 850, Jeremy Clark, told Plaintiff not to start drama or problems like a female employee in Department 802.

17. Said reference was regarding a female employee in Department 802 who had reported a male co-employee for sexual harassment.

18. In April 2020, Joe Foster was the Lead Melt Operator in Department 850 for the Defendant.

19. In May 2020, Joe Foster was the Lead Melt Operator in Department 850 for the Defendant.

20. In April 2020, Joe Foster began training Plaintiff in Department 850.

21. Foster was responsible for informing Nathan Roedema whether Plaintiff passed her probationary period in Department 850.

22. Foster was responsible for informing Defendant whether Plaintiff passed her probationary period in Department 850.

23. Foster had the ability to recommend to Nathan Roedema that Plaintiff fail her probationary period in Department 850.

24. Foster had the ability to recommend to Nathan Roedema that Plaintiff pass her probationary period in Department 850.

25. Foster had the ability to recommend to Defendant that Plaintiff fail her probationary period in Department 850.

26. Foster had the ability to recommend to Defendant that Plaintiff pass her probationary period in Department 850.

27. Foster had the authority to recommend that Plaintiff be transferred to a different department.

28. Foster had the authority to recommend that Plaintiff be reassigned to a different department.

29. Foster had the ability to recommend to Nathan Roedema that Plaintiff be terminated.

30. Foster had the ability to recommend to Defendant that Plaintiff be terminated.

31. In April 2020, Nathan Roedema told Plaintiff that the other employees in Department 850 stated that she was not going to pass her probationary period.

32. In April 2020, Foster assured Plaintiff that he would make sure she passed her probationary period.

33. In April 2020, Foster assured Plaintiff that he would make sure she got moved up to a pay grade four (4).

34. In May 2020, Nathan Roedema told Plaintiff that the other employees in Department 850 stated that she was not going to pass her probationary period.

35. In May 2020, Foster assured Plaintiff that he would make sure she passed her probationary period.

36. In May 2020, Foster assured Plaintiff that he would make sure she got moved up to a pay grade four (4).

37. On or around 5/12/2020, Foster was showing Plaintiff around Department 850.

38. At said time and place, Foster stuck his hand down Plaintiff's pants.

39. At said time and place, Plaintiff declined Foster's advances.

40. Thereafter, Foster attempted to kiss Plaintiff.

41. At that time, Nathan Roedema walked into the area where Foster and Plaintiff were located.

42. At said time and place, Nathan Roedema saw Foster try to kiss Plaintiff.

43. At said time and place, Plaintiff pushed Foster away.

44. At said time and place, Plaintiff declined Foster's advances.

45. Foster then asked Plaintiff where they could go to have sex.

46. Plaintiff again declined Foster's advances.

47. Later in their work-shift on 5/12/2020, Foster led Plaintiff to a dark area of the department.

48. At said time and place, Foster stated to Plaintiff that no one could see them and to pull her pants down to engage in sexual intercourse.

49. At said time and place, Plaintiff again declined Foster's advances.

50. On or around 5/12/2020, Plaintiff asked Nathan Roedema if she could train with a different individual in Department 850.

51. At that time, Nathan Roedema declined Plaintiff's requests.

52. At that time, Nathan Roedema told Plaintiff that Foster was the Lead Melt Operator and best trainer in the Department.

53. At that time, Nathan Roedema told Plaintiff that Foster was the only one stating that Plaintiff could pass the probationary period.

54. Foster advised Plaintiff that if she did not comply and/or continue to train with him, she would not pass her probationary period.

55. On or around 5/13/2020, Foster pursued sexual favors from Plaintiff.

56. On or around 5/13/2020, Foster received oral sex from Plaintiff.

57. On or around 5/14/2020, Plaintiff told Foster that she did not want a physical relationship with him, and that she would risk losing her job rather than enduring his ongoing, unwanted, and inappropriate sexual advances and sexual harassment at work.

58. On or around 5/14/2020, Plaintiff asked Nathan Roedema if she could train with a different trainer.

59. Between 5/14/2020 and 5/22/2020, Foster continued to make unwanted sexual comments to Plaintiff.

60. Between 5/14/2020 and 5/22/2020, Foster continued to make sexual advances toward Plaintiff.

61. Between 5/14/2020 and 5/22/2020, Foster increasingly belittled, degraded, and/or yelled at Plaintiff.

62. Prior to May 2020, Foster had been reprimanded by Defendant.

63. Prior to May 2020, Foster had been reprimanded by Defendant for aggressive behavior.

64. Prior to May 2020, Foster had been reprimanded by Defendant for inappropriate behavior.

65. On or around 5/22/2020, Foster pulled Plaintiff aside and told her that if she reported him that he would "walk her out" of the Defendant's place of business.

66. At said time and place, Foster threatened to have Plaintiff terminated.

67. At said time and place, Foster physically threatened Plaintiff.

68. At said time and place, Foster told Plaintiff "his boys" in Department 850 [all other employees in the Department] would back him up.

69. On or around 5/22/2020, Plaintiff reported Foster to Nathan Roedema.

70. At said time, Nathan Roedema separated Plaintiff and Foster.

71. At said time, Nathan Roedema let Foster continue to yell at Plaintiff from across the department during the rest of her work shift.

72. At said time, Nathan Roedema let Foster continue to harass Plaintiff during the rest of her work shift.

73. Between 5/12/2020 and 5/26/2020, no action was taken by Defendant to stop Foster from his ongoing behavior toward Plaintiff.

74. Between 5/12/2020 and 5/26/2020, Nathan Roedema and/or the Defendant knew of Foster's behavior toward Plaintiff.

75. Between 5/12/2020 and 5/26/2020, Nathan Roedema and/or the Defendant should have known of Foster's behavior toward Plaintiff.

76. On 5/26/2020, Plaintiff filed an internal complaint with the Defendant's Ethics Hotline regarding Foster.

77. Thereafter, a hearing was held with the Defendant's Labor Relations Department and Plaintiff's Union Representative.

78. At the time of the hearing, Defendant discounted Plaintiff's allegations.

79. At that time, Defendant did not believe Plaintiff's allegations.

80. After the hearing, Foster was not reprimanded.

81. At that time, Plaintiff was instructed to go back to Department 850 and attempt to pass her probationary period.

82. At that time, Plaintiff was advised by Defendant to just ignore Foster.

83. Defendant advised Plaintiff to take a video or photograph of Foster if he sexually harassed her again.

84. Defendant advised Plaintiff to take a video or photograph of Foster if he threatened her with termination again.

85. Defendant advised Plaintiff to take a video or photograph of Foster if he threatened her with physical violence again.

86. Defendant advised Plaintiff to take a video or photograph of Foster if he took any further adversarial action against her to prove her allegations.

87. Defendant took no other action.

88. On or around 5/28/2020, Plaintiff asked Defendant if she could be transferred to a different department.

89. At that time, Defendant told Plaintiff she could not be transferred.

90. Between 5/26/2020 and 6/18/2020, Plaintiff was required to return to work in Department 850, where Foster remained as present.

91. On or around 6/2/2020, Plaintiff reported to Defendant's medical department that she was experiencing significant, increasing mental/psychological symptoms.

92. At said time and place, Plaintiff reported to Defendant that said symptoms were due to another employee—Foster—threatening her at work.

93. At said time and place, Plaintiff reported to Defendant that said employee—Foster—was trying to kiss her.

94. Between 5/26/2020 and 6/18/2020, Plaintiff's male co-employees [and friends of Foster, including, but not limited to, Andy Despard and Jeremy Clark] increasingly embarrassed and harassed Plaintiff.

95. Between 5/26/2020 and 6/18/2020, Plaintiff's male co-employees harassed and embarrassed her regarding the situation with Foster.

96. Between 5/26/2020 and 6/18/2020, Foster's presence in Department 850 caused Plaintiff to be in constant fear.

97. Between 5/26/2020 and 6/18/2020, Defendant and Plaintiff's co-employees caused her to be in constant fear.

98. Between 5/26/2020 and 6/18/2020, Defendant and Plaintiff's co-employees caused Plaintiff to be in constant fear of physical retaliation in Department 850.

99. On 6/22/2020, Plaintiff filed a disability application with the Defendant based upon her increasing, significant mental/psychological symptoms.

100. On 6/22/2020, Plaintiff again reported to Defendant that she was subjected to a workplace assault.

101. Thereafter, Defendant stated to Plaintiff that she was "treated fairly, not discriminated against nor harassed nor sexually touched or harassed, nor were any unwanted sexual advances made."

102. Thereafter, Defendant stated to Plaintiff that her significant, increasing mental/psychological symptoms were solely "due to your [Plaintiff's] personal experiences."

103. On 7/22/2020 Plaintiff submitted her resignation letter to Defendant.

104. On 7/22/2020, Plaintiff was compelled to submit her resignation letter to Defendant.

### COUNT I: VIOLATION OF THE IOWA CIVIL RIGHTS ACT
### SEXUAL HARRASSMENT – SUPERVISOR

105. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

106. Plaintiff was a member of a protected class based upon her sex.

107. At all relevant times hereto, Plaintiff was employed by Defendant.

108. While employed by Defendant, Plaintiff was subjected to harassment in her work environment.

109. Foster's conduct was based on Plaintiff's sex.

110. Foster's conduct was unwelcome.

111. Plaintiff's submission to Foster's unwelcome advances was an express or implied condition for receiving job benefits.

112. Plaintiff's refusal to submit to Foster's unwelcome advances resulted in a tangible job detriment.

113. As a result of the Defendant's sexual harassment, Plaintiff has suffered and will continue to suffer the following past and future harms and losses, including, but not limited to, lost wages, medical expenses, severe emotional distress, severe physical and mental pain and suffering, humiliation, embarrassment, and loss of enjoyment of life.

**WHEREFORE,** Plaintiff demands judgement against Defendant in a sum commensurate with the injuries and damages she has suffered, together with interest thereon as allowed by law, and for the costs of this action, as well as punitive damages.

### COUNT II: VIOLATION OF THE IOWA CIVIL RIGHTS ACT
### HOSTILE WORK ENVIRONMENT - SUPERVISOR

114. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

115. Plaintiff was a member of a protected class based upon her sex.

116. Plaintiff was subjected to unwelcome harassment.

117. The harassment was based on her sex.

118. The harassment affected a term, condition, or privilege of her employment with the Defendant.

119. As a result of Defendant's harassment, Plaintiff has suffered and will continue to suffer the following past and future harms and losses, including, but not limited to, lost wages, medical expenses, severe emotional distress, severe physical and mental pain and suffering, humiliation, embarrassment, and loss of enjoyment of life.

**WHEREFORE,** Plaintiff demands judgement against Defendant in a sum

commensurate with the injuries and damages she has suffered, together with interest thereon as allowed by law, and for the costs of this action, as well as punitive damages.

### COUNT III: VIOLATION OF THE IOWA CIVIL RIGHTS ACT
### HOSTILE WORK ENVIRONMENT - COWORKER

120. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

121. Plaintiff was a member of a protected class based upon her sex.

122. Plaintiff was subjected to unwelcome harassment.

123. The harassment was based on her sex.

124. The harassment affected a term, condition, or privilege of her employment with the Defendant.

125. The Defendant knew or should have known of the harassment and failed to take proper remedial action.

126. As a result of Defendant's harassment, Plaintiff has suffered and will continue to suffer the following past and future harms and losses, including, but not limited to, lost wages, medical expenses, severe emotional distress, severe physical and mental pain and suffering, humiliation, embarrassment, and loss of enjoyment of life.

**WHEREFORE,** Plaintiff demands judgement against Defendant in a sum commensurate with the injuries and damages she has suffered, together with interest thereon as allowed by law, and for the costs of this action, as well as punitive damages.

### COUNT IV: VIOLATION OF THE IOWA CIVIL RIGHTS ACT
### HOSTILE WORK ENVIRONMENT – CONSTRUCTIVE DISCHARGE

127. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

128. On 7/22/2020, Plaintiff involuntarily left her employment with the Defendant.

129. Plaintiff has established an underlying claim of discrimination.

130. Said discrimination resulted in intolerable working conditions.

131. Plaintiff was forced into involuntary resignation from her employment with the Defendant because her working conditions were intolerable.

132. As a result of Defendant's constructive discharge, Plaintiff has suffered and will continue to suffer the following past and future harms and losses, including, but not limited to, lost wages, medical expenses, severe emotional distress, severe physical and mental pain and suffering, humiliation, embarrassment, and loss of enjoyment of life.

**WHEREFORE,** Plaintiff demands judgement against Defendant in a sum commensurate with the injuries and damages she has suffered, together with interest thereon as allowed by law, and for the costs of this action, as well as punitive damages.

## JURY DEMAND

**COMES NOW**, the Plaintiff, by and through her undersigned attorneys, and hereby requests a trial by jury in the above-captioned matter.

Respectfully Submitted,

SPAULDING & SHAULL, P.L.C.

/s/ MaKayla Augustine
MaKayla J. Augustine, AT0014542
Nicholas L. Shaull, AT0010096
2423 Ingersoll Avenue
Des Moines, IA 50312
Phone: (515) 277-6559
Fax: (515) 277-7536
E: makayla.augustine@sslawplc.com
E: nick.shaull@sslawplc.com
ATTORNEYS FOR PLAINTIFF

Original filed.